1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MOTEL INN, LLC,** | **NO.  CV 20-11720 KS** |
| **Plaintiff,** | **MEMORANDUM OPINION AND ORDER RE: DEFENDANTS' MOTION TO (1) DISMISS FOR LACK OF PERSONAL** |
| **v.** | **JURISDICTION PURSUANT TO FRCP** |
| **9223-6678 QUEBEC INC., et al.,** | **12(b)(2); (2) DISMISS, OR, IN THE ALTERNATIVE, TRANSFER THE ACTION** |
| **Defendants.** | **FOR IMPROPER VENUE PURSUANT TO FRCP 12(b)(3); AND (3) DISMISS FOR FAILURE TO STATE A CLAIM AGAINST DEFENDANTS STEVEN CLEMENT AND GUILLAUME LANGEVIN PURSUANT TO FRCP (12)(b)(6)** |

## I.    INTRODUCTION

On July 14, 2020, Plaintiff Motel Inn, LLC ("Plaintiff") filed a complaint in the Superior Court of the State of California, County of San Luis Obispo, asserting breach of contract and related claims against 9223-6678 Quebec, Inc., d.b.a Nomad Airstream; Steven Clement, an individual; Guillaume Langevin, an individual; and Does 1-23, inclusive (collectively, "Defendants") (the "Complaint").  (Dkt. No. 1.)  On September 8, 2020, Defendants removed

1

the action to the Central District of California based on diversity jurisdiction.  (S*ee* Dkt. No. 1, Notice of Removal.)  On September 10, 2020, the Central District remanded the case to state court on the ground that Defendants' allegations regarding Plaintiff's citizenship were insufficient to invoke diversity jurisdiction.  (*Id*.)  On December 29, 2020, after obtaining Plaintiff's responses to limited jurisdiction discovery, Defendants filed a Second Notice of Removal to the Central District based on diversity jurisdiction.  (Dkt. No. 1.)  On January 5, 2021, Defendants filed a Notice of Motion and Motion to Dismiss (1) for Lack of Personal Jurisdiction (FED. R. CIV. P. 12(b)(2)); (2) to Dismiss for Improper Venue (FED. R. CIV. P. 12(b)(3)); and (3) to Dismiss Plaintiff's Complaint Against Steven Clement and Guillaume Langevin (FED R. CIV. P. 12(b)(6)), along with the Declarations of Matthew C. Wolf ("Wolf Decl."), Guillaume Langevin ("Langevin Decl."), and Steven Clement ("Clement Decl.") (together, the "Motion").  (Dkt. No. 6.)

On January 14, 2021, the parties consented to proceed before the undersigned United States Magistrate Judge for final disposition.  (Dkt. Nos. 8-10.)  On January 15, 2021, the Court issued an Initial Order in this action.  (Dkt. No. 11.)  On January 20, 2021, Plaintiff filed an Opposition to the Motion (Dkt. No. 12 (the "Oppo.")), along with Declarations of Damien Mavis (Dkt. No. 13 ("Mavis Decl.")) and Chase W. Martins (Dkt. No. 14 ("Martins Decl.")). On January 27, 2021, Defendants filed a Reply.  (Dkt. No. 16.)  On February 10, 2021, the Court held oral argument on the Motion and took the matter under submission for decision. (Dkt. No. 22.)

For the reasons outlined below, Defendants Motion  to Dismiss this Action for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) is DENIED; Defendant's Motion to Dismiss the Action for Improper Venue pursuant to Rule 12(b)(3) is DENIED; Defendants' request to transfer this action to the Northern District of New York pursuant to 28 U.S.C. § 1404(a) is GRANTED; and Defendants' Motion to Dismiss Plaintiff's Complaint Against Steven Clement and Guillaume Langeven pursuant to FRCP 12(b)(6) is DENIED, without prejudice.

## II.   THE COMPLAINT

### A.  The Parties

Plaintiff is a California limited liability company with its principal place of business in San Luis Obispo County and was formed for the purpose of remodeling the former Milestone Inn located in the city of San Luis Obispo, California (the "Project").  (Complaint ¶ 1.)  The Milestone Inn was the first motel in the United States.  (*Id*.)  Defendant 9223-6678 Quebec, Inc., d.b.a Nomad Airstream (a.k.a. Custom Airstream) ("Custom Airstream") is now and was at all relevant times, a company registered in Quebec, Canada, and "is in the business of customizing and rehabilitating Airstream trailers for businesses and individuals located throughout California, the United States, and other countries."  (*Id.* at ¶ 2.)  Defendant Steve Clement ("Clement") resides in Montreal, Quebec and is alleged to be "a president, first shareholder, and agent of Defendant Custom Airstream."  (*Id.* at ¶ 3.) Defendant Guillaume Langevin ("Langevin") also resides in Montreal Quebec and is alleged to be "a president, second shareholder, and agent of Defendant Custom Airstream."  (*Id.* at ¶ 4.)

### B.  Factual Allegations

The Complaint alleges that on or about August 24, 2017, Defendants entered into a Service Agreement dated August 23, 2017 (the "Agreement")[1], in which Defendant Custom Airstream agreed to "customize 26 Airstream travel trailers into hotel rooms" and Plaintiff agreed to pay a fixed price of $80,000 USD per unit totaling $2,080,000.00 USD for Defendant Custom Airstream's services.  (*Id.* at ¶ 8.)  The Agreement was divided into six payments:  a $30,000 initial payment by Motel Inn upon signing the Agreement; the second through sixth

---

[1]      A copy of the Agreement is attached as Exhibit A to the Complaint and may be considered without converting the motion to dismiss into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003) (court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment").

payments of $410,000.00 each "to be paid by Motel Inn beginning 30 days after the [Agreement] was signed and continuing at various intervals until all 26 trailers were delivered on January 5, 2019." (*Id.*)

Under the Agreement, "Defendants were obligated to provide finalized drawings and remodeling plans of each Airstream unit to Motel Inn for Plaintiff to approve." (*Id.* at ¶ 9.) Plaintiff "made the initial $30,000 payment on or about August 24, 2017, Defendant accepted the funds, retained the payment, but never submitted any finalized "written drawings or plans to Motel Inn for approval." (*Id.*) According to the Complaint, after Plaintiff made the initial $30,000 payment, Plaintiff had financing delays related to the remodeling project and when Plaintiff informed Defendants of these delays, "Defendants suspended the [Agreement] but also requested that Motel Inn make a series of smaller payments than what was called for in the [Agreement] ostensibly to allow Defendants to continue working on the remodeling project." (*Id.* at ¶ 10.) Plaintiff then made six additional payments to Defendants: $150,000 on September 26, 2017; $71,000 on December 9, 2017; $30,000 on February 23, 2018; $60,000 on March 16, 2018; $45,760.50 on April 18, 2018; and $50,000 on October 2, 2018. (*Id.*) Plaintiff alleges it has paid Defendants a total of $436,760.50 in connection with the remodeling project and provided Defendants "with a 2017 Airstream trailer shell valued at $53,257.00" that was "sent to Defendants at [Plaintiff's] expense on or about September 26, 2017." (*Id.* at ¶ 11.)

Plaintiff avers that the cash payments and the value of the Airstream trailer represent total payments to Defendants in the amount of $490,017.50, but Defendants have not delivered finalized written plans and drawing for Plaintiff's approval, have not delivered any invoicing or records of work they have performed under the Agreement, and have not "completed any Airstream trailers." (*Id.*) According to Plaintiff, Defendants "have not procured any Airstream trailers for [Plaintiff's] project or completed any work for [Plaintiff] despite having received substantial payments made by [Plaintiff]." (*Id.*) On October 5, 2018, Plaintiff

4

notified Defendants that Plaintiff would not make any more payments on the Agreement "until Defendants performed their obligations under the contract with the substantial payments they had already received, and dependable financing was available." (*Id.* at ¶ 12.) Plaintiff maintains that since October 2018, Defendants still have not provided an invoice or record of work performed under the Agreement and "have not started work on any Airstream trailer remodels." (*Id.*)

On June 17, 2020, Defendants delivered a letter to Plaintiff terminating the [Agreement] and "asserting that [Plaintiff] still owed a balance of $1,708,239.50 on the [Agreement]." (*Id.* at ¶ 13.) On June 22, 2020, Plaintiff sought clarification from Defendants regarding their position on the status of the Agreement and Defendants responded that Plaintiff owed the $1,708,239.50 balance on the Agreement, even though Defendants had not performed any of their obligations under the Agreement. (*Id.* at ¶ 14.) Plaintiff alleges it "paid Defendants $436,760.50 and delivered an Airstream trailer to Defendants but has received nothing from Defendants." (*Id.* at ¶ 15.)

Plaintiff asserts four causes of action against Defendants: (1) breach of contract; (2) unjust enrichment; (3) money had and received; and (4) declaratory relief. (*Id.* at ¶¶ 16-33.)

### C. Allegations re: Jurisdiction and Venue

As noted Plaintiff commenced this action in California Superior Court, County of San Luis Obispo. Plaintiff alleges that "[j]urisdiction and venue [were] appropriate in San Luis Obispo County Superior Court because Defendants have engaged in substantial business operations in the County of San Luis Obispo" and the contract at issue "was entered into and to be fulfilled in the City of San Luis Obispo, California." (*Id.* at ¶ 7.)

//

//

5

Plaintiff contends that "Defendants' contacts, ties, and relations with San Luis Obispo County, and the contract amount in controversy of $2,080,000.00 make jurisdiction and venue appropriate in San Luis Obispo County Superior Court." (*Id.*)

## III.   THE MOTION

### A. Defendants' Arguments

Defendants move to dismiss the Complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2); to dismiss for improper venue pursuant to Rule 12(b)(3) or, in the alternative to transfer the action; and to dismiss the action for failure to state a claim against individual defendants Clement and Langevin pursuant to Rule 12(b)(6). Defendants argue that personal jurisdiction does not exist in California for Defendants because Defendants do not transact business in California and Plaintiff's claims against Defendants do not arise from Defendants' activities in California. (Motion at 3.) Specifically, Defendants contend that Plaintiff has not alleged any facts that establish that Defendants are "present, domiciled or consented to jurisdiction in California" or that "Defendants have any permanent and continuous contacts with California." (*Id.* at 8.) Defendants further argue that Plaintiff's allegation that Custom Airstream provides customizing and rehabilitation services for "businesses and individuals located throughout California, the United States, and other countries" is conclusory and insufficient to confer personal jurisdiction over Defendants. (*Id*. at 9.)

Defendants offer declarations of Langevin, Clement, and Wolf to confirm that individual defendants Clement and Langevin are residents and domiciled in Quebec, Canada and Custom Airstream is incorporated and has its principle place of business in Quebec, Canada. (Motion at 9 (*citing* Langevin Decl. ¶¶ 1-2; Clement Decl. ¶¶ 1-2; Wolf Decl., Ex. 1, ¶¶ 2-4).) Defendants argue that Custom Airstream "does not purposefully solicit business or advertise its services in California." (Motion at 9.) Defendants maintain that "Custom

Airstream has only had two customers in California, including Plaintiff, out of the 40 customers it has serviced over the past three years." (*Id.*)  Defendants maintain that the Agreement "is the sole contact purportedly supporting personal jurisdiction in California." (*Id.* at 3.)  Defendants urge that "the lack of jurisdiction requires the Court to dismiss the Complaint as it otherwise would offend the Due Process Clause of the Fourteenth Amendment." (*Id.*)

In addition, Defendants request that if the matter is not dismissed entirely for improper venue, that this Court transfer the lawsuit to the Northern District of New York consistent with the Agreement's forum selection clause, pursuant to 28 U.S.C. § 1404(a).  Defendants argue that Plaintiff has waived the exercise of personal jurisdiction in California because the Agreement's forum selection clause expressly requires that "[p]roper legal venue for all matters related to this Agreement is agreed as the closest to Albany, New York." (Motion at 10 (*citing* Langevin Decl. ¶ 34).)  Defendants also emphasize that "all of the material witnesses and associated records that pertain to Plaintiff's claims are primarily located in Quebec, Canada" where Defendants' business is located. (Motion at 4.)

### B. Plaintiff's Arguments

Plaintiff acknowledges that "he does not yet know whether Defendants' contacts with California are sufficient to establish general jurisdiction over them." (Oppo. at 6.)  However, Plaintiff maintains that Defendants have sufficient contacts with California to subject them to specific jurisdiction in the Central District of California. (*Id.* at 8.)  First, Plaintiff argues that Defendants purposely availed themselves of the privilege of conducting business in the forum state by "marketing and selling custom Airstream trailers in California" and thereby "creating a continuing relationship with Plaintiff." (*Id.* at 9.)  Specifically, Plaintiff argues that for claims arising in contract, when determining whether a defendant has reached into a forum state sufficiently to satisfy  the "purposeful availment" analysis, courts may consider "prior

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

negotiations and contemplated future consequences, along with the terms of the contact and the parties' actual course of dealings." (*Id.* at 9 (*citing Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985)).)

Plaintiff argues that Defendant's website activity forms a basis for jurisdiction in California because Defendants "advertise their services in California on a website accessible to Plaintiff and other citizens of California"; the website "invites potential customers in California to 'contact them' via the website, email or phone in order to obtain business from California and other states"; the website "depicts two 'projects' associated with the state of California as examples of the work they do to customize Airstream trailers," one in San Francisco and Plaintiff's Motel Inn project." (*Id.* at 9.) Plaintiff emphasizes that the Agreement terms "contain provisions demonstrating Defendants' anticipated contacts with Plaintiff and California." (*Id*. at 9-10.) Based on these facts, Plaintiff argues that the claim at issue arises out of Defendants' forum-related activities and thus satisfies the second prong of the specific jurisdiction analysis. (*Id.* at 11.) Finally, Plaintiff argues that, applying seven factors outlined in *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199-1202 (9th Cir. 1988), the exercise of jurisdiction over Defendants in this case is reasonable. (*Id.* at 7.)

**C. Defendant's Reply**

In their Reply, Defendants maintain that they have not purposefully availed themselves of the privilege of conducting business in California and "this Court's exercise of jurisdiction of Defendants offends notions of fair play and substantial justice of the Due Process Clause." (Reply at 1.) Defendants contend that Plaintiff fails to make a prima facie showing that the Court has jurisdiction over Defendants, stressing that they have not performed any affirmative conduct in California. (*Id.* at 2-5.) Defendants insist that all of their obligations under the Agreement were to be performed in Canada, not California, and the termination of the

8

Agreement, which is the basis for Plaintiff's claim in this lawsuit, occurred in Quebec, Canada. (*Id*. at 6.)

Further, Defendants argue that based on the Agreement's forum-selection clause, Plaintiff has waived the exercise of personal jurisdiction in California and the Complaint should be dismissed for improper venue. (*Id*. at 7-8.) In the alternative, Defendants argue that Plaintiff cannot disregard the forum selection clause in the Agreement and they ask that the Court transfer case to the Northern District of New York. (*Id*.) Finally, Defendants reiterate their arguments that Plaintiff's claims against individual defendants Clement and Guillaume should be dismissed for failure to state a claim under Rule 12(b)(6) because these defendants are not parties to the Agreement and Plaintiff has not alleged they were alter egos of Custom Airstream, which would be necessary to state a claim against these individuals. (*Id.* at 9.)

## IV.   APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3), respectively, provide that a party may assert the defenses of lack of personal jurisdiction and improper venue by motion. FED. R. CIV. P. 12(b)(2), (3).

### A. Personal Jurisdiction

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is proper. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). When the motion is based on written materials rather than an evidentiary hearing, as is the case here, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Id.* Thus, the Court need "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). While a plaintiff cannot "simply

rest on the bare allegations of [the] complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), the court must take as true uncontroverted allegations in the complaint. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Any conflicts between the parties about statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*; *see Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1083, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [the plaintiff's] version of events for purposes of this appeal.").

If, as here, there is no federal statute governing personal jurisdiction, the district court must apply the law of the state in which the district court sits. FED. R. CIV. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm jurisdictional statute is coextensive with the federal due process requirements. *Panavision,* 141 F.3d at 1320 (*citing* CAL. CIV. PROC. CODE § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.")). Thus, the jurisdictional analyses under California state law and federal due process are the same. For a court to exercise jurisdiction over a nonresident defendant, the defendant must have sufficient "minimum contacts" with the district such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A federal court may exercise either general or specific jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 n.8-9 (1984). General jurisdiction applies when a defendant's activities in the state are "substantial" or "continuous and systematic," even if the cause of action is unrelated to those activities. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (internal quotations omitted). If general jurisdiction is inappropriate, a court may exercise specific jurisdiction if the defendant has sufficient contacts with the forum state in relation to the cause of action. *Id.*

10

**B. Venue**

Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." These provisions authorize dismissal only when venue is "wrong" or "improper" in the forum in which it was brought. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 50-51 (2013). The determination of whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391, which provides that "[e]xcept as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). The statute further provides that "[a] civil action may be brought in —(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b)(1)-(3).

A forum selection clause may be enforced through a motion pursuant to 28 U.S.C. §1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In a diversity action, federal law governs the enforceability of forum selection clauses. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). The United States Supreme Court has held that § 1404(a) and the doctrine of *forum non conveniens* are the appropriate mechanisms to enforce a forum selection clause. *Atl. Marine*, 571 U.S. at 61.

//

//

11

A forum selection clause is presumptively valid and will not be set aside unless the party challenging its enforcement demonstrates that the forum selection clause is unreasonable or fundamentally unfair. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991); *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1295 (9th Cir. 1997). A party challenging a forum selection clause bears a "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

## V.    DISCUSSON

### A. Defendants' Contacts with the Forum Are Sufficient to Support the Exercise of Specific Personal Jurisdiction

First, Plaintiff is correct that Defendant's Motion only discusses general jurisdiction. (*See* Motion at 8.) Indeed, the factual record presented here does not establish any pattern of general and/or continuous contacts between Montreal-based Defendants and California sufficient to support the exercise of general jurisdiction. Plaintiff acknowledges as much. (*See* Oppo. at 6.) However, that is not the end of the inquiry. The Court must consider whether Plaintiff has presented facts sufficient to support the exercise specific personal jurisdiction over Defendants. Thus, the Court considers whether Plaintiff has met his burden to present sufficient facts to establish that: (1) Defendants' purposefully availed themselves of the privilege of doing business in California ; (2) the claims arise out of Defendants' forum-related activities; and (3) the exercise of jurisdiction would be reasonable. *Roth v. Garcia Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991). As noted above, California's long-arm jurisdictional statute is coextensive with the federal due process requirements. *Panavision,* 141 F.3d at 1320 (*citing* CAL. CIV. PROC. CODE § 410.10). Consequently, the jurisdictional analyses under California state law and federal due process are the same.

//

//

12

### 1.  Purposeful Availment

With respect to purposeful availment, the Court is unpersuaded that the mere *existence* of Defendants' website, with depictions of a single project in San Francisco and the contemplated Motel Inn project in San Luis Obispo, California, are evidence of Defendants purposefully conducting activities *in* California.  Indeed, the evidence indicates that visitors to Defendants' website were directed to reach out to *Defendants* for further information, rather than the other way around.  (Oppo. at 4.)  There is no evidence that Defendants conducted any direct business within California through the website.  Further, the fact that Plaintiff delivered a single Airstream trailer *to Defendants* in Quebec also does not establish that Defendants purposely availed themselves of the privilege of conducting business in California.  Plaintiff's assertion that "Defendants have transacted substantial business with Plaintiff" in California is not supported by the evidence.  (*Id.* at 11.)

However, the evidence indicates that Defendants had extensive communications with Plaintiff in California while negotiating the Agreement terms and that Defendants drafted the Agreement and provided it to Plaintiff for signature.  (Oppo. at 11; *see also* Mavis Decl. ¶¶ 7, 11.)  The parties also had numerous communications in connection with three amendments to adjust the Agreement payment terms when Plaintiff experienced delays in obtaining its financing.  (Motion at 5-6.)  Plaintiff, relying on *Roth v. Garcia Marquez*, argues that Defendants purposefully availed themselves of the privilege of conducting business in California through the history of negotiations between Defendants and Plaintiff, as well as the fact that the Agreement would have required Defendants not only to deliver the 26 Airstream trailers to California, but Defendants would have been obligated to provide ongoing assistance and maintenance services to the completed Airstream trailers in California.  (*See* Oppo. at 10.)  According to Plaintiff, the history of the parties' negotiations coupled with the consequences of the Agreement are sufficient to demonstrate the Defendants purposefully availed themselves of the privilege of doing business in California.  The Court agrees.

In *Roth*, a filmmaker plaintiff who resided in California filed a breach of contract action in the Central District of California against the defendant author, who resided in Mexico, and his literary agent, a resident of Barcelona, Spain. *See Roth*, 942 F.2d at 619.  The filmmaker alleged that the author and his agent breached an agreement to sell the plaintiff film rights to Gabriel Garcia Marquez's novel, *Love in the Time of Cholera*. *Id*.  The defendants moved to dismiss the complaint for lack of personal jurisdiction. *Id*. at 18.  The district court denied the motion to dismiss and Ninth Circuit affirmed. *Id*.

In addressing the purposeful availment analysis for specific jurisdiction, the Ninth Circuit first noted, "[i]t is important to distinguish contract from tort actions." *Id*. at 621.  The Court acknowledged that interstate communications, *e.g.*, faxes, email, and telephone calls alone do not qualify as "purposeful activity" sufficient to invoke the benefits and protection of the forum state. *Id*. at 622 (*citing Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)).  But the Court concluded that a broader issue—namely, the "the future consequences of the contract"—must also be considered. *Id*.  Thus, despite the defendants' "minimal physical presence in the forum" and the fact that the *plaintiff* made the initial solicitation, because "most of the work would have been performed in California" and "most of the future of the contract would have centered on the forum," the Ninth Circuit found "there was enough purposeful availment here to compel a finding of jurisdiction on this prong." *Id*.  *Roth* is instructive here.

After considering Plaintiff's evidence of the parties' extensive negotiations and communications for the Motel Inn project, along with Defendants' ongoing obligations to perform services under the Agreement in California, the Court concludes that, like in *Roth*, this is a "very close call," but there is sufficient evidence of purposeful availment to support specific personal jurisdiction. *Id*.

//

//

14

**2.  Arising from Forum-Related Activities**

As to the second prong, it is clear that the claim arises out of the Agreement, which was negotiated and signed by Plaintiff, who was in California throughout the negotiations and subsequent amendments.  Defendants do not dispute that they had extensive communications with Plaintiff regarding the Agreement's terms and amendments, but insist that these communications do not constitute forum-related activities.  (Reply at 4-6.)  Defendants also argue that the breach of the Agreement "exclusively occurred in Quebec, Canada." (*Id.* at 6.) Defendants contend that "any alleged breach of the Agreement could not have occurred in California since Custom Airstream's performance under the Agreement strictly took place in Quebec, Canada." (*Id.*)  Defendants appear to take an exceedingly narrow view of activities leading to the alleged breach and wholly ignore the parties' course of dealings leading up to the Agreement and its subsequent amendments.  Accordingly, the Court finds that the claim at issue does indeed arise from forum-related activities and Plaintiff has sufficiently established the second prong of the specific jurisdiction analysis.

**3.  Reasonableness**

Even when the first two requirements for personal jurisdiction over a defendant are satisfied, the court may not exercise jurisdiction unless to do so would be reasonable. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 474-75 (9th Cir. 1885) ("Even if the first two prongs are satisfied, an unreasonable exercise of jurisdiction violates the Due Process clause.").  In the opening brief, Defendants focus exclusively on the requirements of general jurisdiction and do not address the "reasonableness" elements of specific jurisdiction.  (*See* Motion at 1-9.) Indeed, in the Reply, Defendants argue "there is no need to analyze reasonableness under the third prong of the test" because, according to Defendants, "Plaintiff failed to meet is prima facie burden to establish specific jurisdiction over Defendants." (Reply at 7.)  As outlined above, the Court has determined that Plaintiff met its burden, albeit just, to demonstrate

purposeful availment by Defendants and that the lawsuit arises out of Defendants' forum-related activities.  Therefore, despite Defendants' arguments to the contrary, the Court must consider reasonableness for purposes of its due process  analysis.

The Ninth Circuit has set out seven factors to consider when determining whether the exercise of jurisdiction over a nonresident defendant meets the reasonableness test:  (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant; (3) conflicts of law between the forum and defendant's home jurisdiction; (4) the forum's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995).  No single factor is dispositive and the Court must balance all seven factors.  *Roth*, 942 F.2d at 631 (internal citation omitted).

### 1.  Degree of Purposeful Interjection

Although the Court has determined that Defendants purposefully availed themselves of the privilege of doing business in California, in assessing reasonableness, the Court nevertheless must also consider the "degree of their intrusion." *Zeigler,* 64 F.3d at 475.  As noted, Defendants' course of dealings with Plaintiff in negotiating the Agreement terms and in completing several amendments to the Agreement is evidence of purposeful interjection into California.  (*See, e.g.*, Langevin Decl. ¶¶ 17, 21, 24, Exs. B, C, D.)  Defendant drafted the Agreement, which contemplated that Plaintiff would pay a total $2,080,000.00 in six installments for the 26 Airstreams.  (Langevin Decl., Ex. A. ¶ 1.4.)  Additionally, Plaintiff emphasizes that if Defendants had performed under the Agreement as contemplated, not only would they have delivered the 26 Airstreams to Plaintiff for installation in San Luis Obispo, but Defendants would also be required to provide ongoing maintenance services in California.  Even so, this contemplated future conduct does not undermine the fact that, to date,

1    Defendants' actual presence in California has been minimal.  Therefore, the Court finds that

2    the *degree* of Defendants' purposeful interjection into California has not been extensive.

3    Accordingly, this factor weighs in Defendants' favor.

4

5                              **2.  Burden on Defendants**

6

7        Defendants maintain that "all of the material witnesses and associated records that

8    pertain to Plaintiff's claims are primarily located in Quebec, Canada where Airstream's

9    business is located." (Motion at 4.)  This may be so, but Defendants do not offer any evidence

10   establishing a significant burden that would be imposed on Defendants by litigating the case

11   in California.

12

13       Plaintiff contends that the number of witnesses needed for the defense of this matter

14   would be limited to individual Defendants Clement and Langevin and Plaintiff intends to call

15   "several witnesses" regarding the Agreement formation, Plaintiff's own efforts to "secure

16   financing, damages, and the circumstances of Defendants' breach." (Oppo. at 13.)  Plaintiff

17   also argues that given that Defendants have twice removed this lawsuit to federal court in

18   California,[2] filed the instant Motion and  "a similar motion to dismiss or transfer venue in San

19   Luis Obispo County Superior Court," and  propounded written discovery on Plaintiff,

20   Defendants have not shown any burden they would suffer from litigating in California.  (Oppo.

21   at 13.)  In addition, Plaintiff points out that even if the Agreement's forum selection clause is

22   enforced, it would still require Defendants to litigate this case "more than 300 miles from

23   Defendants' residence in Quebec."  (*Id*.)  Finally, Plaintiff points out that in the digital age,

24   documents are readily transmitted electronically and modern telecommunications and

25   transportation greatly reduce the burden of interstate litigation.  (*Id.* (*citing CE Distrib., LLC*

26

27   ───────────────────

     [2]    In a footnote, Plaintiff contends that Defendants improperly removed the case to California federal court twice.
     (Oppo. at 13 n.2 (*citing* 28 U.S.C. § 1406(b)(3)).)  Because the parties have not briefed whether the second removal was
28   proper, this Court expresses no opinion on that issue.

1    *v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).)  Because Defendants have not
2    adequately addressed reasonableness in either the Motion or the Reply, they have failed to
3    counter Plaintiff's arguments or demonstrate any burden that would make it unreasonable to
4    litigate this case in the instant forum.  Accordingly, this factor weighs in Plaintiff's favor.

### 3.  Extent of Conflict with Sovereignty of Foreign State

While the Court  cannot and does not ignore the fact that Defendants reside in Canada,
Defendants do not present any argument or evidence that proceeding in California would
present a conflict with the sovereignty of Canada.  *See Sinatra v. Nat'l Enquirer, Inc.*, 854
F.2d 1191, 1199 (9th Cir. 1988).  Indeed, as Plaintiff points out, the Agreement's forum
selection clause plainly contemplates that any dispute would be litigated in the United States
and  disputes concerning or arising from the Agreement are to be governed by the Law of New
York. (Oppo. at 14, Martin Decl. ¶ 9.)  Thus, this factor weighs in Plaintiff's favor.

### 4.  Forum State's Interest in Adjudication

California has significant interest in the adjudication of this matter.  Plaintiff is a
California Limited Liability Company, Plaintiff has paid more than $400,000.00 to
nonresident Defendants toward Plaintiff's remodeling project, which, if completed as
contemplated, would be a significant business enterprise in the important tourist industry in
the mid-coastal city of San Luis Obispo, California.  Defendants present no evidence or
argument to refute the fact that the forum state has a substantial interest in adjudicating this
suit.  Accordingly, this factor favors Plaintiff.

//
//
//
//

5. **Most Efficient Resolution**

Both sides will present witnesses in this case, but Plaintiff argues that the majority of witnesses will be related to its side of the dispute. (Oppo. at 14.)  Plaintiff urges that at this juncture, it believes "the only witnesses relevant to Defendants' case" will be individual defendants Clement and Guillaume. (*Id*.)  Defendants, however, may have a different view. That said, given the evidence (or lack thereof) before the Court at this stage, the Court cannot conclude that concerns for efficiency in resolving the case in California favor either party. This factor, therefore, is neutral.

6. **Convenience and Effectiveness of Relief for Plaintiff**

Plaintiff is a California Limited Liability Company in the business of obtaining financing to refurbish a California motel project. (Oppo at 15; Mavis Decl. ¶ 3.)  Plaintiff would undoubtedly find it more convenient to litigate this matter in California rather than New York or Canada.  Plaintiff also emphasizes that it has "never traveled to New York or Canada nor was this something contemplated under the terms of the [Agreement]." (Oppo. at 15; Mavis Decl. ¶ 22.)  Plaintiff argues that Motel Inn, LLC "has no source of income other than what it can raise through financing" and it "would be prohibitively expensive for Plaintiff" to litigate this case far from California. (Oppo. at 15; Mavis Decl. ¶ 20.)  Defendants present no evidence or argument to challenge Plaintiff's evidence, but insist that they have little connection with California and most of the documents in the case are located in Canada.  On balance, this factor weighs slightly in Plaintiff's favor.

7. **Availability of an Alternative Forum**

Plaintiff concedes, as it must, that "[a]n alternative forum exists in Albany, New York, pursuant to the forum selection clause" in the Agreement. (Oppo. at 15.)  Indeed, Defendants

argue that if the Court declines to dismiss the case for lack of personal jurisdiction, the forum selection clause should be enforced and the matter transferred to New York consistent with the forum selection clause. (Motion at 11-13.) Because the Agreement indisputably evidences that the parties agreed to resolve disputes concerning the Agreement in a forum other than California, this factor favors Defendants.

Having considered each of the seven factors relevant to determining whether the exercise of jurisdiction is reasonable, the Court finds that while one factor is neutral (most efficient resolution) and two factors favor Defendant (*i.e.*, degree of purposeful interjection; and availability of an alternative forum), the remaining factors weigh in Plaintiff's favor (burden on defendant; conflict with foreign state sovereignty; the forum state's interests; and convenience to the Plaintiff). Therefore, the balance tips towards Plaintiff and the Court concludes that the exercise of specific jurisdiction over Defendants in California would be reasonable and does not offend due process. Thus, Plaintiff has met its burden to satisfy all three prongs necessary to establish a prima facie case that the exercise of specific personal jurisdiction over Defendants is appropriate in this case.

Accordingly, the Defendants' Motion to dismiss the case pursuant to Rule 12(b)(2) for lack of personal jurisdiction is DENIED.

### B.  The Venue Selection Clause is Presumptively Enforceable

Defendants request the Complaint be dismissed for improper venue pursuant to Rule 12(b)(3), or in the alternative, that the case be transferred, consistent with the Agreement's forum selection clause, to the Northern District of New York pursuant to 28 US.C. § 1404(a). (Motion at 11-13.) Defendants argue that venue in California "not only violates the forum-selection clause in the [Agreement] but it also violates the statutory requirements" of 28 U.S.C. § 1391(b). Defendants contend that venue is improper under § 1391(b)(1) because Defendants

reside in Quebec, Canada, and under § 1391(b)(2) because "any alleged breach of the [Agreement] by Custom Airstream . . . would have occurred in Quebec, Canada, not California." (Reply at 8.) Finally, Defendants maintain that venue is improper under § 1391(b)(3) "because this Court, or any other court in California, cannot exercise personal jurisdiction over Defendants[.]" (*Id.* at 9.) Defendants urge that, as an alternative to dismissing the Complaint, "this action should be transferred to the Northern District of New York, which is the closest venue to key witnesses and records, pursuant to 28 US.C. § 1404(a) and 1406(a)." (Motion at 15.)

As an initial matter, the Court notes that although venue will not lie in this forum under § 1391(b)(1) because Defendants reside in Canada, the Court is not persuaded that the alleged breach of the Agreement occurred exclusively in Quebec, Canada, not in California. Furthermore, the Court has concluded, at outlined above, that the Court may exercise specific personal jurisdiction over Defendants. As a result, venue is not improper in this district under § 1391(b)(3) and Defendants' Motion for dismissal based in improper venue under Rule 12(b)(3) must be denied. The Court now turns to the parties' forum selection clause.

"[F]ederal law, specifically 28 U.S.C. § 1404(a) governs the District Court's decision whether to give effect to the parties' forum-selection clause." *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 32 (1988). In *Stewart*, the United States Supreme Court explained that when considering a motion to transfer under § 1404(a), the "presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Id*. at 29. In *Atlantic Marine*, following on from *Stewart*, the High Court explained that "Section 1404(a) . . . provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district . . . [and] a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59-60 (*citing Stewart*, 487 U.S. at 33).

//

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Plaintiff does not challenge the validity of the Agreement's forum selection clause. Rather, it argues that the clause is "permissive" rather than "mandatory" and, as a result, this Court can exercise its discretion not to enforce the forum-selection clause because it does not "prohibit litigation elsewhere." (Oppo. at 17.) Plaintiff's arguments are unpersuasive.

A valid forum-selection clause "represents the parties' agreement as to the most proper forum" and its enforcement "bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart,* 487 U.S. at 31, 33. The record here presents no reason to find that the forum-selection clause in the Agreement is unreasonable, that is was secured by any overreaching conduct by Defendants, or is otherwise unenforceable. Nor has Plaintiff presented any exceptional circumstances that warrant ignoring this provision in the Agreement. As explained in *Atlantic Marine*, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atl. Marine*, 517 U.S. at 63. Here, Plaintiff has not met its heavy burden to demonstrate that "trial in the chosen forum would be so difficult and inconvenient that [Plaintiff] would effectively be denied a meaningful day in court." *Argueta*, 87 F.3d at 325.

Accordingly, the Court, as it must, gives controlling weight to the forum selection clause and will order this case transferred to the Northern District of New York.

### C. Court Declines to Rule on Rule 12(b)(6) Motion

Defendants' third motion seeks an order dismissing Plaintiff's claims against individual defendants Clement and Guillaume for failure to state a claim under Rule 12(b)(6). (Motion at 15-16.) Because the Court has concluded this matter should be transferred to the Northern District of New York, the Court need not reach the merits of the Rule 12(b)(6) motion

regarding defendants Clement and Guillaume.  This should be left for the transferee court.
Defendants' Rule 12(b)(6) Motion is hereby DENIED, without prejudice to its re-filing.

## CONCLUSION

For the foregoing reasons,

(1) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Federal
Rule of Civil Procedure 12(b)(2) is DENIED;

(2) Defendants' Motion to Dismiss the Action for Improper Venue Pursuant to Federal
Rule of Civil Procedure 12(b)(3) is DENIED,

(3) Defendants' request that this action be transferred to the Northern District of New
York pursuant to 28 U.S.C. § 1404(a), is GRANTED; and

(4) Defendants' Motion to Dismiss Plaintiff's claims against Defendants Steven
Clement and Guillaume Langevin Pursuant to Federal Rule of Civil Procedure
12(b)(6) is DENIED without prejudice.

**IT IS HEREBY ORDERED** that this case is **TRANSFERRED** to the Northern
District of New York forthwith.

DATED: March 11, 2021

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE